# EXHIBIT A

1  LIONEL Z. GLANCY (#134180)
   ROBERT V. PRONGAY (#270796)
2  LESLEY F. PORTNOY (#304851)
   CHARLES H. LINEHAN (#307439)
3  **GLANCY PRONGAY & MURRAY LLP**
   1925 Century Park East, Suite 2100
4  Los Angeles, California 90067
5  Telephone:    (310) 201-9150
   Facsimile:    (310) 201-9160
6  Email:        clinehan@glancylaw.com

7  *Attorneys for Plaintiff*

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                   FOR THE COUNTY OF SAN MATEO

10
   BILLY GONZALEZ, Individually and on Behalf        Case No.:    **17CIV02284**
11 of All Others Similarly Situated,
                                                      **CLASS ACTION**
12                          Plaintiff,
                                                      **COMPLAINT**
13              v.
14 AVINGER, INC., JEFFREY M. SOINSKI,                 **DEMAND FOR JURY TRIAL**
   MATTHEW B. FERGUSON, DONALD A.
15 LUCAS, JOHN B. SIMPSON, JAMES B.
   MCELWEE, JAMES G. CULLEN, THOMAS J.
16 FOGARTY, CANACCORD GENUITY INC.,
   COWEN  AND  COMPANY,  LLC,
17 OPPENHEIMER & CO. INC., BTIG, LLC, and
   STEPHENS INC.,
18
                          Defendants.
19

20

21

22

23

24           17 - CIV - 02284
             CMP
25           Complaint
             518915
26           ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
27

28

FILED
SAN MATEO COUNTY
MAY 2 3 2017
Clerk of the Superior Court
By



                              COMPLAINT

1   Plaintiff Billy Gonzalez ("Plaintiff"), by and through his attorneys, alleges the following upon

2   information and belief, except as to those allegations concerning Plaintiff, which are alleged upon

3   personal knowledge.   Plaintiff's information and belief is based upon, among other things, his

4   counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings

5   made by Avinger, Inc. ("Avinger" or the "Company") with the United States Securities and Exchange

6   Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and

7   disseminated by Avinger; and (c) review of other publicly available information concerning Avinger.

8   ## NATURE OF THE ACTION AND OVERVIEW

9   1.   This is a class action on behalf of all persons and entities that purchased or otherwise

10   acquired shares of Avinger common stock pursuant and/or traceable to the Company's false and/or

11   misleading registration statement and prospectus (collectively, the "IPO Registration Statement")

12   issued in connection with the Company's January 30, 2015, initial public offering (the "IPO" or the

13   "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

14   2.   Avinger is purportedly a commercial-stage medical device company that designs,

15   manufactures, and sells image-guided, catheter-based systems that are used by physicians to treat

16   patients with peripheral artery disease or "PAD."

17   3.   The Company claimed in its IPO prospectus that its mission was to improve the

18   treatment of vascular disease through the introduction of products based on its "lumivascular

19   platform." The Company described its "lumivascular platform" as "the only intravascular image-

20   guided system available in this market." The Company's products at the time of the IPO purportedly

21   included the "Lightbox imaging console," and the "Wildcat, Kittycat, and Ocelot family of catheters,"

22   which the Company claimed were designed to allow physicians to penetrate a total blockage in an

23   artery.

24   4.   In the Prospectus, the company also stated that it was developing "Pantheris," which

25   the Company described as an "image-guided atherectomy device, designed to allow physicians to

26   remove arterial plaque in PAD patients with precision." The Company noted that Pantheris was

27   undergoing a U.S. clinical trial intended to support a 510(k) submission in the second half of 2015 to

28   the U.S. Food and Drug Administration ("FDA"). Avinger touted Pantheris in the prospectus, stating

"[w]e believe that Pantheris . . . will significantly enhance our market opportunity within PAD and can expand the overall addressable market for PAD endovascular procedures."

5.      In the IPO, the Company sold 5 million shares at a public offering price of $13.00 per share.   The Company received net proceeds of approximately $56,897,000 from the IPO.   The proceeds from the IPO were purportedly to be used for working capital and other general corporate purposes, including payment of scheduled interest and principal on the Company's credit facility with PDL Biopharma, or the credit agreement.

6.      However, on July 12, 2016, the Company announced disappointing preliminary second quarter 2016 results.  The Company attributed its results, in part, to "lower than expected" utilization of Pantheris in the second quarter.   The Company also noted that it was making improvements to Pantheris, in particular the robustness of its optical imaging fiber, and implied that issues with Pantheris were negatively affecting commercialization of the product.  As a result of the foregoing, the Company lowered its full year revenue guidance from a range of $25 million to $30 million to a range of $19 million to $23 million.

7.      On this news, Avinger's stock price fell $4.54 per share, or 39.7%, to close at $6.89 per share on July 13, 2016, on unusually heavy trading volume.

8.      On April 10, 2017, the Company announced preliminary first quarter 2017 results, including total revenue of approximately $3.5 million, a decrease of 22% from the first quarter of 2016, revenue from disposable devices of $2.9 million, a 12% decrease compared to the first quarter of 2016, and revenue related to Lightbox imaging consoles of $0.6 million, a 50% decrease compared to the first quarter of 2016.  In response, the Company announced that it had been conducting a review of potential strategic alternatives, including raising capital from strategic investors, partnerships for distribution of products outside the U.S., and a sale or merger of the Company.  The Company further disclosed that it encountered challenges with product reliability and the commercialization of its Lumivascular technology, and that, as a result, the Company would make adjustments in its business as it prepared for the launch of the next generation Pantheris and Below-the-Knee products in late 2017 and early 2018.  Specifically, the Company disclosed that it was reducing its workforce by approximately 33%, and its sales personnel from 60 down to 32.

9.      On this news, Avinger's stock price fell $1.00 per share, or 62.5%, to close at $0.60 per share on April 11, 2017, on unusually heavy trading volume.  On May 22, 2017, Avinger's stock price closed at $0.38 per share, a decline of $12.62, or 97.1% from the IPO price of $13.00 per share.

10.     The IPO Registration Statement was materially false and misleading and/or omitted to state: (1) that the Company's Pantheris product and its other Lumivascular products had substantial reliability issues; (2) that the reliability issues would negatively impact sales of the Company's products; (3) that the Company's products were not commercially viable; and (4) that, as a result of the foregoing, Defendants' statements in the IPO Registration Statement regarding Avinger's business, operations, and prospects, were materially false and/or misleading, and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).  This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, which explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought *in any State court* of competent jurisdiction shall be removed to any court in the United States."  Section 16(c) of the Securities Act refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than fifty persons asserting claims *under state or common law*.  This is an action asserting federal law claims.  Thus, it does not fall within the definition of a "covered class action" under §16(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

12.     Each Defendant has sufficient contacts with California, or otherwise purposefully avails itself of benefits from California or has property in California so as to render the exercise of jurisdiction over each by the California courts consistent with traditional notions of fair play and substantial justice.

13.     The amount in controversy exceeds the jurisdictional minimum of this Court, and the total amount of damages sought exceeds $25,000.

14.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v).

15.     Venue is proper in this Court pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v. Many of the violations of law complained of herein occurred in this State and in large part in this County, including the dissemination of the materially false and misleading statements complained of herein into this State and into this County.  In addition, Avinger's principal executive offices are located in Redwood City, California, which is within this judicial district.

## **PARTIES**

16.     Plaintiff Billy Gonzalez purchased Avinger securities pursuant and/or traceable to the IPO Registration Statement issued in connection with the Company's IPO and has been damaged thereby.

17.     Defendant Avinger, Inc. is incorporated in Delaware and its principal executive offices are located at 400 Chesapeake Drive Redwood City, California 94063.  The Company's common stock trades on the NASDAQ Stock Market (the "NASDAQ") under the symbol "AVGR."

18.     Defendant Jeffrey M. Soinski ("Soinski") was the Chief Executive Officer and a Director of Avinger, and signed or authorized the signing of the Company's IPO Registration Statement filed with the SEC.

19.     Defendant Matthew B. Ferguson ("Ferguson") was the Chief Financial Officer ("CFO") and Chief Business Officer ("CBO") of Avinger, and signed or authorized the signing of the Company's IPO Registration Statement filed with the SEC.

20.     Defendant Donald A. Lucas ("Lucas") was a Director of Avinger and signed or authorized the signing of the Company's IPO Registration Statement filed with the SEC.

21.     Defendant John B. Simpson ("Simpson") was the Executive Chairman of the Board of Directors of Avinger, and signed or authorized the signing of the Company's IPO Registration Statement filed with the SEC.

22.     Defendant James B. McElwee ("McElwee") was a Director of Avinger and signed or authorized the signing of the Company's IPO Registration Statement filed with the SEC.

23.     Defendant James G. Cullen ("Cullen") was a Director of Avinger, and signed or authorized the signing of the Company's IPO Registration Statement filed with the SEC.

1        24.    Defendant Thomas J. Fogarty ("Fogarty") was a Director of Avinger and signed or
2   authorized the signing of the Company's IPO Registration Statement filed with the SEC.

3        25.    Defendants Soinski, Ferguson, Lucas, Simpson, McElwee, Cullen, and Fogarty are
4   collectively referred to hereinafter as the "Individual Defendants."

5        26.    Defendant Canaccord Genuity Inc. ("Canaccord") served as an underwriter for the
6   Company's IPO.  In the Offering, Canaccord agreed to purchase 1,750,000 shares, exclusive of the
7   option to purchase additional shares.

8        27.    Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the
9   Company's IPO.  In the Offering, Cowen agreed to purchase 1,750,000 shares, exclusive of the option
10  to purchase additional shares.

11       28.    Defendant Oppenheimer & Co. Inc. ("Oppenheimer") served as an underwriter for the
12  Company's IPO.  In the Offering, Oppenheimer agreed to purchase 500,000 shares, exclusive of the
13  option to purchase additional shares.

14       29.    Defendant BTIG, LLC ("BTIG") served as an underwriter for the Company's IPO.  In
15  the Offering, BTIG agreed to purchase 500,000 shares, exclusive of the option to purchase additional
16  shares.

17       30.    Defendant Stephens Inc. ("Stephens") served as an underwriter for the Company's IPO.
18  In the Offering, Stephens agreed to purchase 500,000 shares, exclusive of the option to purchase
19  additional shares.

20       31.    Defendants Canaccord, Cowen, Oppenheimer, BTIG, and Stephens are collectively
21  referred to hereinafter as the "Underwriter Defendants."  The Underwriter Defendants received
22  commissions for their participation in the IPO.

23       **CLASS ACTION ALLEGATIONS**

24       32.    Plaintiff brings this action as a class action pursuant to California Code of Civil
25  Procedure Section 382 on behalf of a Class, consisting of all persons and entities that purchased or
26  otherwise acquired shares of Avinger common stock pursuant and/or traceable to the Company's false
27  and/or misleading registration statement and prospectus issued in connection with the Company's IPO,
28  and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers

1  and directors of the Company or its related entities, at all relevant times, members of their immediate

2  families and their legal representatives, heirs, successors or assigns and any entity in which Defendants

3  have or had a controlling interest.

4      33.    The members of the Class are so numerous that joinder of all members is impracticable.

5  During the relevant period, Avinger's securities were actively traded on the NASDAQ.  While the

6  exact number of Class members is unknown to Plaintiff at this time and can only be ascertained

7  through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in

8  the proposed Class.  The Company sold approximately 5 million shares in the IPO.  Moreover, record

9  owners and other members of the Class may be identified from records maintained by Avinger or its

10  transfer agent and may be notified of the pendency of this action by mail, using the form of notice

11  similar to that customarily used in securities class actions.

12      34.    Plaintiff's claims are typical of the claims of the members of the Class as all members

13  of the Class are similarly affected by Defendants wrongful conduct in violation of federal law that is

14  complained of herein.

15      35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and

16  have retained counsel competent and experienced in class and securities litigation.

17      36.    Common questions of law and fact exist as to all members of the Class and

18  predominate over any questions solely affecting individual members of the Class.  Among the

19  questions of law and fact common to the Class are:

20      (a)    whether the Securities Act was violated by Defendants' acts as alleged herein;

21      (b)    whether statements made by Defendants to the investing public in connection

22  with the Company's IPO omitted and/or misrepresented material facts about the business, operations,

23  and prospects of Avinger; and

24      (c)    to what extent the members of the Class have sustained damages and the proper

25  measure of damages.

26      37.    A class action is superior to all other available methods for the fair and efficient

27  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

28  damages suffered by individual Class members may be relatively small, the expense and burden of

1  individual litigation make it impossible for members of the Class to individually redress the wrongs

2  done to them.  There will be no difficulty in the management of this action as a class action.

3  <center>**SUBSTANTIVE ALLEGATIONS**</center>

4  <center>**Background**</center>

5  38.     Avinger is purportedly a commercial-stage medical device company that designs,

6  manufactures, and sells image-guided, catheter-based systems that are used by physicians to treat

7  patients with PAD.

8  39.     The Company claimed in its IPO prospectus that its mission was to improve the

9  treatment of vascular disease through the introduction of products based on its "lumivascular

10  platform."  The Company described its "lumivascular platform" as "the only intravascular image-

11  guided system available in this market."  The Company's products at the time of the IPO purportedly

12  included the "Lightbox imaging console," and the "Wildcat, Kittycat, and Ocelot family of catheters,"

13  which the Company claimed were designed to allow physicians to penetrate a total blockage in an

14  artery.

15  40.     In the Prospectus, the company also stated that it was developing "Pantheris," which

16  the Company described as an "image-guided atherectomy device, designed to allow physicians to

17  remove arterial plaque in PAD patients with precision."  The Company noted that Pantheris was

18  undergoing a U.S. clinical trial intended to support a 510(k) submission in the second half of 2015 to

19  the FDA.  Avinger touted Pantheris in the prospectus, stating "[w]e believe that Pantheris . . . will

20  significantly enhance our market opportunity within PAD and can expand the overall addressable

21  market for PAD endovascular procedures."

22  <center>**The Company's False and/or Misleading**
**IPO Registration Statement**</center>

23

24  41.     On January 29, 2015, Avinger filed an amendment to the Form S-1 registration

25  statement originally filed on December 30, 2014.  The amendment forms part of the IPO Registration

26  Statement.  Therein, the Company, in relevant part, stated:

27  > We are also developing Pantheris, our image-guided atherectomy device, designed to allow physicians to remove arterial plaque in PAD patients with precision. Pantheris is currently undergoing a U.S. clinical trial intended to support a 510(k) submission in

28  > the second half of 2015 to the U.S. Food and Drug Administration, or FDA. We

<center>COMPLAINT</center>
<center>7</center>

believe that Pantheris, if cleared by FDA, will significantly enhance our market opportunity within PAD and can expand the overall addressable market for PAD endovascular procedures.

Current treatments for PAD, including bypass surgery, can be costly and may result in complications, high levels of post-surgery pain and lengthy hospital stays and recovery times. Minimally invasive, or endovascular, treatments include stents, angioplasty, and atherectomy devices, which are catheter-based products for the removal of plaque. These treatments also have limitations in their safety or efficacy profiles and frequently result in recurrence of the disease, also known as restenosis. We believe one of the main contributing factors to high restenosis rates for PAD patients treated with endovascular technologies is the amount of vascular injury that occurs during an intervention. Specifically, these treatments often disrupt the membrane between the outermost layers of the artery, which we refer to as the black line.

Our lumivascular platform is the only technology that offers real-time visualization of the inside of the artery during PAD treatment. We believe this approach will significantly improve patient outcomes by providing physicians with a clearer picture of the artery using radiation-free image guidance during treatment, enabling them to better differentiate between plaque and healthy arterial structures. Our lumivascular platform is designed to improve patient safety by enabling physicians to direct treatment towards the plaque, while avoiding healthy portions of the artery.

During the third quarter of 2014, we began enrolling, and we are continuing to enroll, patients in VISION, a clinical trial designed to support a filing with FDA for our Pantheris atherectomy device. VISION is designed to evaluate the safety and efficacy of Pantheris to perform atherectomy using intravascular imaging. Data collection from the VISION trial is ongoing and data monitoring and auditing of the acute procedural data and 30-day follow-up data is currently underway. As of January 12, 2015, preliminary acute procedural data were available for 116 patients, and 30-day follow-up data were available for 35 of these patients, and results reviewed by an independent core lab are available for 113 lesions. Based on the currently available data, we believe that we are on track to meet or exceed the requirements necessary to meet the trial's primary efficacy endpoint. Within the 116-patient group, we are aware of four potential material adverse events, or MAEs, consisting of two emboli and two target lesion revascularizations, or TLRs. We believe the final data from VISION will also allow us to demonstrate that avoiding the black line reduces the likelihood of restenosis in these patients. We expect to complete the VISION trial and submit for 510(k) clearance from FDA during the second half of 2015. If Pantheris is cleared by FDA, we plan to commercialize it as part of our lumivascular platform in the United States and in select European countries after obtaining any required marketing authorizations.

<p style="text-align:center">*     *     *</p>

**Research and Development**

Our ongoing research and development activities are primarily focused on improving and enhancing our lumivascular platform, specifically our core competency of integrating OCT intravascular imaging onto therapeutic catheters. Our research objectives target areas of unmet clinical need, increase the utility of the lumivascular platform and adoption of our products by healthcare providers.

- *Product line improvements and extensions.* We are developing improvements to our lumivascular platform, including additional catheters for use in different clinical applications. For example, we are developing a next-generation CTO

<p style="text-align:center">COMPLAINT<br>8</p>

crossing device to target the coronary market and enhanced versions of Pantheris.

- *Additional treatment indications.* We intend to seek additional regulatory clearances from FDA to expand the indications for which our products can be marketed within PAD, as well as in other areas of the body. This includes both expanding the marketed indications for our current products, as well as development of new products.

- *Next-generation console.* We are focusing our console development efforts on miniaturization, equipment integration and increased processing power in anticipation of future catheter products. We may also develop a version of our lumivascular platform that integrates OCT imaging into existing catheterization lab and operating room imaging systems.

- *Improved software and user interface.* We are actively improving our software to provide more information and control to our end users during a procedure. We use physician and staff feedback to improve the features and user functionality of our lumivascular platform.

42.    On January 30, 2015, the Company filed with the SEC its IPO prospectus, which forms part of the IPO Registration Statement that was declared effective on January 29, 2015. The IPO prospectus reaffirmed the statements identified in ¶41.

43.    In the IPO, the Company sold 5 million shares at a public offering price of $13.00 per share. The Company received net proceeds of approximately $56,897,000 from the IPO. The proceeds from the IPO were purportedly to be used for working capital and other general corporate purposes, including payment of scheduled interest and principal on the Company's credit facility with PDL Biopharma, or the credit agreement.

44.    The IPO Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation. Under applicable SEC rules and regulations, the IPO Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

45.    The IPO Registration Statement was materially false and misleading and/or omitted to state: (1) that the Company's Pantheris product and its other Lumivascular products had substantial reliability issues; (2) that the reliability issues would negatively impact sales of the Company's products; (3) that the Company's products were not commercially viable; and (4) that, as a result of the

1  foregoing, Defendants' statements in the IPO Registration Statement regarding Avinger's business,

2  operations, and prospects, were materially false and/or misleading, and/or lacked a reasonable basis.

3  <u>Disclosures Subsequent to the IPO</u>

4      46.    On July 12, 2016, the Company announced disappointing preliminary second quarter

5  2016 results.  The Company attributed its results, in part, to "lower than expected" utilization of

6  Pantheris in the second quarter.  As a result, the Company lowered its full year revenue guidance from

7  a range of $25 million to $30 million to a range of $19 million to $23 million.  In greater part, the

8  Company stated:

9      **Redwood City, California, July 12, 2016** — Avinger, Inc., (NASDAQ: AVGR) a
       leading developer of innovative treatments for peripheral artery disease (PAD),
10      announced today that based on preliminary unaudited financial results, it expects total
       revenue of approximately $4.7 million for the second quarter ended June 30, 2016, an
11      increase of 57% from the second quarter of 2015.

12      Revenues from disposable devices were $3.7 million, a 118% increase compared to the
       second quarter of 2015 and a 12% increase from the first quarter of 2016. Revenue
13      related to Lightbox™ imaging consoles is expected to be $ 1.0 million, a 29% decrease
       compared to the second quarter of 2015 and a 17% decrease from the first quarter of
14      2016. During the quarter, the installed base of Lumivascular™ accounts increased by
       19 and ended the quarter at 126 accounts.

15
       "Although we experienced lower than expected utilization of Pantheris in the second
16      quarter, we remain enthusiastic about the longer-term outlook for this disruptive
       technology," said Jeff Soinski, Avinger's President and CEO. "With an established
17      and growing installed base, we are now focusing more acutely on market development
       and physician training."

18
       Dr. John B. Simpson, Avinger's Founder and Executive Chairman, stated, "Based on
19      our early commercial experience, we have continued to make improvements to
       Pantheris, and in particular the robustness of its optical imaging fiber, and have
20      received positive feedback from physicians on the performance of the current device.
       We are also making progress on new versions of Pantheris which include enhanced
21      cutting capabilities for more difficult to treat lesions and a lower profile device for
       smaller vessels."

22
       **2016 Guidance**

23
       The company now expects 2016 revenue to be in the range of $19 million to $23
24      million, representing year-over-year growth ranging from 78% to 115%, compared to
       previous guidance for revenue in the range of $25 million to $30 million.

25      47.    On this news, Avinger's stock price fell $4.54 per share, or 39.7%, to close at $6.89 per

26  share on July 13, 2016, on unusually heavy trading volume.

27

28

48.     On April 10, 2017, the Company announced poor preliminary first quarter 2017 results, including total revenue of approximately $3.5 million, a decrease of 22% from the first quarter of 2016, revenue from disposable devices of $2.9 million, a 12% decrease compared to the first quarter of 2016, and revenue related to Lightbox imaging consoles of $0.6 million, a 50% decrease compared to the first quarter of 2016.  In response, the Company announced that it had been conducting a review of potential strategic alternatives, including raising capital from strategic investors, partnerships for distribution of products outside the U.S., and a sale or merger of the Company.  The Company further disclosed that it encountered challenges with product reliability and the commercialization of its Lumivascular technology, and that, as a result, the Company would make adjustments in its business as it prepared for the launch of the next generation Pantheris and Below-the-Knee products in late 2017 and early 2018.  Specifically, the Company disclosed that it was reducing its workforce by approximately 33%.  In greater part, the Company stated:

Redwood City, California, April 10, 2017 — Avinger, Inc. (NASDAQ: AVGR) (the "Company"), a leading developer of innovative treatments for peripheral artery disease ("PAD"), today provided an update on several aspects of its business, including preliminary results for the first quarter of 2017, an organizational realignment, and continued progress on product development and clinical initiatives. The Company also announced that it has been conducting a review of various strategic alternatives focused on maximizing shareholder value. Potential strategic alternatives being explored and evaluated as part of this review include, but are not limited to, raising capital from strategic investors, partnerships for distribution of products outside the U.S., and a sale or merger of the Company.

"Avinger has achieved a great deal in the last year by bringing Pantheris OCT-guided atherectomy to market, increasing our installed base of Lumivascular accounts and presenting compelling two-year data from our VISION study. However, we have also encountered challenges with product reliability and the broad commercialization of our Lumivascular technology. Consequently, we have decided to make adjustments in our business as we prepare for the launch of our next generation Pantheris and Below-the-Knee products in late 2017 and early 2018," said Jeff Soinski, Avinger's president and CEO. "Our organizational realignment, cost reduction measures and the exploration of strategic initiatives are all intended to maximize shareholder value."

**Preliminary First Quarter 2017 Results**

Based on preliminary unaudited financial results, Avinger expects total revenue of approximately $3.5 million for the first quarter ended March 31, 2017, a decrease of 22% from the first quarter of 2016 and a decrease of 26% from the fourth quarter of 2016.

Revenue from disposable devices is expected to be $2.9 million for the first quarter of 2017, a 12% decrease compared to the first quarter of 2016 and a 22% decrease from the fourth quarter of 2016. Revenue related to Lightbox imaging consoles is expected

to be $0.6 million, a 50% decrease compared to the first quarter of 2016 and a 40% decrease from the fourth quarter of 2016.

During the first quarter of 2017, the installed base of Lumivascular accounts increased by five and ended the quarter at 161 accounts.

Cash and cash equivalents totaled $23.0 million as of March 31, 2017, compared to $36.1 million as of December 31, 2016.

**Business Update**

Avinger's top priority for 2017 is to complete the next generation Pantheris projects, which are expected to improve product reliability and usability and expand the Company's market opportunity by treating smaller vessels below the knee. In addition, the Company expects to begin enrollment in an in-stent restenosis trial for Pantheris. Avinger's R&D and manufacturing teams expect to continue to introduce incremental improvements to the current version of the Pantheris catheter to improve the consistency and reliability of the currently marketed product, while next generation devices are in development. A more detailed description of these initiatives is as follows:

- Pantheris 3.0: Next generation atherectomy catheter designed to enhance product reliability and incorporate additional features and improvements desired by physicians, such as a single balloon inflation system, a longer nosecone option, a stiffer shaft for enhanced pushability, and markings on the shaft for longitudinal measurement. The Company expects to file a 510(k) application for Pantheris 3.0 during the third quarter of 2017.

- Pantheris BTK: A six-French version of Pantheris incorporating next generation improvements and designed to facilitate below-the-knee (BTK) procedures, which is expected to meaningfully expand the applicable market for Avinger's products. The Company expects to file a 510(k) application for this device in the fourth quarter of 2017.

- In-Stent Restenosis Trial: The Company has filed an investigational device exemption (IDE) with the FDA to initiate a Pantheris in-stent restenosis (ISR) trial. Following FDA review of the trial protocol, the Company expects patient enrollment to begin in the third quarter of this year. If successful, Pantheris will be the second atherectomy product indicated for in-stent restenosis, a segment estimated to represent approximately 20% of PAD procedures in the U.S.

On the clinical evidence front, positive interim two-year clinical data from the pivotal VISION study of the Company's Lumivascular technology were presented in January at LINC and final results are expected to be released by the end of June 2017.

**Organizational Realignment**

The Company is reducing its workforce by approximately 33% compared to year-end 2016, to a total of 131 full-time equivalent employees, under a plan expected to be substantially completed this week. The plan is designed to focus the Company's commercial efforts on driving catheter utilization in its strongest markets, around its most productive sales professionals. The Company's field sales personnel will be reduced to 32 down from 60 people as of December 31, 2016. This workforce reduction is designed to reduce operating expenses while continuing to support major

product development and clinical initiatives. The strategic reduction in the field sales force is designed to maintain robust engagement with higher volume users of the Company's Lumivascular technology by its highest performing sales representatives and position the Company to return to growth in 2018 behind the launch of its next generation products.

Based on the organizational changes and other expense reduction measures, the Company expects cash utilization to decrease to approximately $7 million per quarter by the second half of 2017, compared to an average of $13.5 million per quarter in 2016 and $13.1 million in the first quarter of 2017. The Company expects cash currently on hand will be sufficient to fund the operations through the end of 2017.

49.     On this news, Avinger's stock price fell $1.00 per share, or 62.5%, to close at $0.60 per share on April 11, 2017, on unusually heavy trading volume. On May 22, 2017, Avinger's stock price closed at $0.38 per share, a decline of $12.62, or 97.1% from the IPO price of $13.00 per share.

## FIRST CLAIM
### Violation of Section 11 of The Securities Act
### (Against All Defendants)

50.     Plaintiff repeats and realleges each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

51.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

52.     The IPO Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.     Avinger is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the IPO Registration Statement.

54.     As issuer of the shares, Avinger is strictly liable to Plaintiff and the Class for the misstatements and omissions.

55.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO Registration Statement were true and without omissions of any material facts and were not misleading.

56.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

1    57.    Plaintiff acquired Avinger shares pursuant and/or traceable to the IPO Registration

2    Statement.

3    58.    Plaintiff and the Class have sustained damages.  The value of Avinger common stock

4    has declined substantially subsequent to, and due to, Defendants' violations.

5                              **SECOND CLAIM**
                     Violation of Section 15 of The Securities Act
6                        (Against the Individual Defendants)

7    59.    Plaintiff repeats and realleges each and every allegation contained above, except any

8    allegation of fraud, recklessness or intentional misconduct.

9    60.    This count is asserted against the Individual Defendants and is based upon Section 15

10   of the Securities Act.

11   61.    Individual Defendants, by virtue of their offices, directorship and specific acts were, at

12   the time of the wrongs alleged herein and as set forth herein, controlling persons of Avinger within the

13   meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence

14   and exercised the same to cause Avinger to engage in the acts described herein.

15   62.    Individual Defendants' positions made them privy to and provided them with actual

16   knowledge of the material facts concealed from Plaintiff and the Class.

17   63.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the

18   aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

19   WHEREFORE, Plaintiff prays for relief and judgment, as follows:

20   (a)    Determining that this action is a proper class action under California Code of Civil

21   Procedure Section 382;

22   (b)    Awarding compensatory damages in favor of Plaintiff and the other Class members

23   against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

24   wrongdoing, in an amount to be proven at trial, including interest thereon;

25   (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

26   action, including counsel fees and expert fees;

27   (d)    Awarding rescission or a rescissory measure of damages; and

28   (e)    Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 23, 2017

**GLANCY PRONGAY & MURRAY LLP**

By: _____

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email: clinehan@glancylaw.com

*Attorneys for Plaintiff*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Charles H. Linehan (SBN 307439)<br>Glancy Prongay & Murray LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067 | F I L E D<br>SAN MATEO COUNTY<br>MAY 2 3 2017<br>Clerk of the Superior Court<br>By _____ |
| TELEPHONE NO.: (310) 201-9150   FAX NO.: (310) 201-9160 | |
| ATTORNEY FOR (Name): Plaintiff Billy Gonzalez | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch - Hall of Justice

CASE NAME:
Gonzalez v. Avinger, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited   [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 17CIV02284<br>JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [✓] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of Judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): 2- Violation of Sections 11 and 15 of the Securities Act of 1933
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 23, 2017

Charles H. Linehan
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court,<br>Cal. Standard |

ORIGINAL   FAXED

17 - CIV – 02284
CCCS
Civil Case Cover Sheet
518916